UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIANA B. FOSTER, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-0306-B |
| TARGET CORPORATION, | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Target Corporation's Motion for Summary Judgment (Doc. 39) and Objections to Evidence Filed in Support of Plaintiff's Response (Doc. 52). For the reasons that follow, the Court **GRANTS** Target's motion and **OVERRULES** its objections as **MOOT**.

**I.**

**BACKGROUND[1]**

This is a slip-and-fall case. Plaintiff Diana B. Foster was shopping in the meat department of a Target store when she slipped and fell on the floor. Doc. 48, Pl.'s App., 3. The meat department is a small area—"[j]ust a little bit bigger" than "a typical dining room table[.]" *Id.* at 18. When Foster fell, she had been walking around a roughly six-foot-long meat cart, *id.* at 21, 37, which Target employee Ryan Phelps was using to re-stock lunch meats. *Id.* at 19. Phelps had been re-stocking shelves in the meat department for about fourteen minutes prior to Foster's fall. *See* Doc. 41, Def.'s

---

[1] The Court draws its factual history from the pleadings and the summary-judgment record. Any contested fact is identified as the contention of a particular party.

App. F (Video), 5:13:37–5:27:45.[2] As part of his employment duties, Phelps is required to look out for spills. Doc. 48, Pl.'s App., 15, 31.

At the time of Foster's fall, Phelps was standing within two feet of Foster with his back to toward her. *Id.* at 23–24. He immediately knelt down to help her, but she struggled to regain her footing. *Id.* at 3; *see* Doc. 41, Def.'s App. F (Video), 5:27:54. Foster explains she "continued to slip [on a] substance," which "covered an area big enough that both of [her] feet and hands touched it on the floor[.]" Doc. 48, Pl.'s App., 4. When Foster was finally able to stand up, Phelps inspected the area but saw "nothing on the floor." *Id.* at 25. Likewise, in Foster's deposition, she stated that she did not *see* a substance on the floor, but she felt an "oily or greasy" substance in the area where she fell. Doc. 41, Def.'s App., 15. After Foster's fall, Target's store manager completed a "Guest Incident Report," in which he stated, under the heading "Guest description of what happened," that Foster slipped on a "wet spot on [the] ground in [the] meat area[.]" Doc. 48, Pl.'s App., 43.

Foster now asserts a premises-liability claim against Target, seeking to recover damages she incurred as a result of her fall. Doc. 22, Pl.'s Second Am. Compl., 3–5. Target moved for summary judgment, arguing that Foster lacks sufficient evidence to sustain her claim. Doc. 39, Def.'s Mot., 1–2. Additionally, Target filed objections to several statements in Foster's affidavit submitted in support of her response to Target's motion. *See generally* Doc. 52, Objs. The Court has received all briefing on Target's summary-judgment motion, and the deadline to respond to Target's objections has passed. Accordingly, Target's motion and objections are now ripe for review.

---

[2] Based on the video, it is difficult to discern when Phelps entered the meat area. But Foster contends Phelps appeared in the meat area at 5:13:37, Doc. 47, Pl.'s Resp. Br., 9, and Target does not suggest otherwise. *See generally* Doc. 40, Def.'s Mot. Br.; Doc. 53, Def.'s Reply Br.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the summary-judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting an essential element of the non-movant's claim. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing

that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quotation marks omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary[-]judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated) (quotations marks omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

### III.

### ANALYSIS

*A.   The Court Grants Summary Judgment in Favor of Target.*

Target moves for summary judgment on two grounds: (1) Target did not have actual or constructive knowledge of an unreasonably dangerous condition; and (2) there was no unreasonably dangerous condition on Target's premises. Doc. 40, Def.'s Mot. Br., 4.

It is undisputed that Foster was Target's invitee. *See id.* at 17. Target thus owed Foster "a duty to exercise reasonable care to protect her from dangerous conditions in the store that were known or reasonably discoverable[.]" *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (citation omitted). To sustain a premises-liability claim as an invitee, Foster must show that: (1) Target had "[a]ctual or constructive knowledge of some condition on the premises"; (2) "the condition posed an unreasonable risk of harm"; (3) Target "did not exercise reasonable care to

reduce or eliminate the risk"; and (4) Target's "failure to use such care proximately caused [Foster's] injuries." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (citations omitted).

Foster may satisfy the first element, Target's knowledge of a condition, by establishing that: (1) Target "placed the substance on the floor"; (2) Target "actually knew that the substance was on the floor"; or (3) "it is more likely than not that the condition existed long enough to give [Target] a reasonable opportunity to discover it," thereby providing Target with "constructive knowledge." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358, 359 (5th Cir. 2017) (citing *Reece*, 81 S.W.3d at 814–15) (applying Texas law).

As explained below, the Court concludes that Foster has not created a genuine issue of material fact regarding Target's knowledge of the condition at issue.[3]

1. <u>Foster does not create a genuine issue of material fact as to whether Target placed the substance on the floor or knew of its existence.</u>

Foster first argues that Target—through its employee, Phelps—placed the substance on the floor and thus had knowledge of its existence. Doc. 47, Pl.'s Resp. Br., 15.[4] In support, Foster points out that at the time of her fall, Phelps was stocking lunch meats by moving them from his cart into the meat cooler. *Id.* Further, Foster states that Phelps "has seen damaged product, including meat," previously and, "on previous occasions, spilled substances that required clean up[.]" *Id.* (emphasis omitted). Based on this evidence, Foster contends that a jury could find that Phelps created the dangerous condition that caused Foster's fall "by spilling the contents from the meat products he was

---

[3] As a result, the Court need not analyze whether Foster raised a genuine issue of material fact as to whether an unreasonably dangerous condition existed.

[4] Foster appears to combine the first and second methods of proving knowledge, *see id.*, so the Court addresses them together.

stocking." *Id.*

The Court disagrees. Foster's contention is pure speculation—she provides no evidence that Phelps spilled meat-packaging contents onto the floor. Rather, she relies solely on the fact that Phelps has seen damaged meat products before and has, in the past, spilled a substance. "At best, this evidence raises a mere suspicion that [Phelps] might have . . . spilled a foreign substance where the fall occurred." *McCarty*, 864 F.3d at 359. Accordingly, this evidence is insufficient to create a genuine issue of material fact regarding whether Phelps spilled the substance upon which Foster slipped. *See id.* (citation omitted).

2. <u>Foster fails to create a genuine fact issue regarding whether Target had constructive knowledge of the substance.</u>

Foster next argues that Phelps had constructive knowledge of the substance on the floor. Doc. 47, Pl.'s Resp. Br., 15. In sum, Foster contends that given Phelps's proximity to Foster, the small size of the area in which they stood, and the fact that Phelps had been stocking meat in the area for fourteen minutes before Foster's fall, a reasonable jury could find that Phelps had constructive knowledge of the substance. *Id.* at 15–16 (citing the video). And according to Foster, the fact that Phelps was required to look out for spills during his shift further supports a finding of constructive knowledge. *Id.* at 17.

These circumstances, however, do not create a genuine factual dispute regarding Phelps's constructive knowledge. In a premises-liability case, a plaintiff can establish constructive knowledge "by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000). The determination of "[w]hat constitutes a reasonable time for a premises owner to discover a

dangerous condition" is a fact-specific inquiry, and evidence of an employee's physical proximity to the condition "will often be relevant to the analysis." *Reece*, 81 S.W.3d at 816. But irrespective of whether "an employee was in close proximity" to a conspicuous or not-so-conspicuous condition, "there must be some proof of how long the hazard was there before liability can be imposed[.]" *Id.*

Here, Foster does not provide any evidence indicating the amount of time the substance remained on the floor before she fell. Instead, she relies on the amount of time Phelps spent in the meat section prior to her fall, as well as his proximity to her—and presumably to the substance—at the time of the fall. But this evidence does not bear upon the duration the substance was on the floor. And to the extent Foster argues that Phelps had constructive notice of the substance because he spilled it, the Court has already found Foster's evidence too speculative to support such an inference. *See supra* at 6. As a result, even viewing the evidence in the light most favorable to Foster, the Court holds she has not raised a genuine issue of material fact as to whether Target had constructive notice of the substance on the floor. *See, e.g.*, *Reece*, 81 S.W.3d at 816–17 (finding no evidence of constructive knowledge where the plaintiff presented "no evidence to indicate how long the spill existed before [the plaintiff] fell"); *McCarty*, 864 F.3d at 360 (same); *Morales v. Kroger, L.P.*, 2019 WL 3936751, at *3 (N.D. Tex. Aug. 20, 2019) (same); *Brawhaw v. Kroger Co.*, 2010 WL 3703850, at *5 (N.D. Tex. Sept. 22, 2010) (same).

Because Foster fails to create a genuine issue of material fact as to whether Target had knowledge of the condition at issue, the Court **GRANTS** summary judgment in favor of Target on Foster's premises-liability claim.

B.     *The Court Overrules Target's Objections as Moot.*

After Foster filed her appendix in response to Target's motion for summary judgment, Target objected to several statements from Foster's affidavit in the appendix. *See generally* Doc. 52, Objs. Because the Court has not relied upon any of these statements in reaching its decision, it **OVERRULES** Target's objections as **MOOT**.

### IV.

### CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Target's summary-judgment motion (Doc. 39) and **OVERRULES** its evidentiary objections (Doc. 52) as **MOOT**.

**SO ORDERED.**

**SIGNED: February 2, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE